IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MARK HENNIGAN, § | |
| Plaintiff, § | |
| § | |
| V. § | SA-25-CV-115-JKP (HJB) |
| § | |
| PHH MORTGAGE CORPORATION, § | |
| (D/B/A PHH MORTGAGE SERVICES), § | |
| AND MOUNT NORTH CAPITAL 4 LLC § | |
| Defendants. § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE U.S. DISTRICT JUDGE JASON PULLIAM:**

NOW COMES Mark Hennigan, Plaintiff herein, and files this his First Amended Complaint against PHH Mortgage Corporation d/b/a PHH Mortgage Services and Mount North Capital 4 LLC, Defendants herein, and in support thereof, respectfully shows the Court the following:

### PARTIES AND SERVICE

1.      Plaintiff is an individual residing in Bexar County, Texas.

2.      Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services (hereinafter "PHH") is a foreign corporation doing business in Texas and has appeared for all purposes.  Service of this pleading on said Defendant will be effected via its attorney of record.

3.      Defendant Mount North Capital 4 LLC (hereinafter "Mount North") is a foreign corporation doing business in Texas and has appeared for all purposes.  Service of this pleading on said Defendant will be effected via its attorney of record.

### JURISDICTION AND VENUE

4.      The subject matter in controversy is within the jurisdictional limits of this court

pursuant to 28 U.S.C. §1332.

5. This court has jurisdiction over Defendants, because said Defendants do business in the Western District of Texas and have established both specific and general minimum contacts in the Western District of Texas so as to make them amenable to personal jurisdiction herein.

6. Venue in the San Antonio Division of the Western District of Texas is proper in this cause under 28 U.S.C. 1391(a)(2) because the acts and omissions giving rise to this suit occurred in the San Antonio Division of the Western District of Texas.

## FACTS

7. Plaintiff Mark Hennigan ("Plaintiff") and his wife Jill Hennigan ("Mrs. Hennigan") reside at his homestead located at 12645 Old Wick Rd., San Antonio, Texas 78230 (hereinafter, "the home").

8. At all times relevant to this petition, Defendant PHH was the servicer of a loan secured by the home (hereinafter, "the loan").

9. In late 2021, Mrs. Hennigan was diagnosed with cancer. By mid-2023, the cost of her cancer treatments had caused Plaintiff to have difficulty making the monthly payments on the loan.

10. Plaintiff contacted PHH in September 2023 to inform PHH of his family's hardship and to ask for mortgage assistance. A relationship manager assured Plaintiff that PHH would work with him if he maintained communication. Plaintiff followed through by calling monthly with updates.

11. In January 2024, Plaintiff contacted PHH to discuss options for bringing the loan current. PHH's representative Jerome confirmed that Plaintiff was eligible to apply for a loan modification, and PHH sent Plaintiff a loss mitigation application towards the end of

2

January 2024.

12. Plaintiff properly completed the loss mitigation application and overnighted the application and all required documents to PHH on February 18, 2024. Plaintiff included a detailed hardship letter explaining that he had incurred approximately $80,000 in medical expenses in connection with his wife's cancer treatment.

13. On March 1, 2024, PHH's representative Cherish Joy Flores ("Flores") called Plaintiff to confirm PHH's receipt of the loss mitigation application and to request additional pay stubs showing Plaintiff's year-to-date income. Flores explained that she would be guiding Plaintiff through the loss mitigation process as his relationship manager.

14. Plaintiff promptly submitted this additional proof of income to PHH, which its employee Adelina verified as being sufficient.

15. On March 26, 2024, Flores called Plaintiff and informed him that he had been denied for a loan modification. When asked about other loss mitigation options, Flores stated that additional options would be presented in forthcoming documents.

16. On April 5, 2024, Plaintiff received a letter from PHH confirming that it had denied his loan modification application. However, the letter indicated that Plaintiff had not even been evaluated for a repayment plan.

17. On April 9, 2024, Plaintiff called PHH and spoke with its employee named Chenae Harvey ("Harvey") about additional loss mitigation options that may be available to allow him to keep his home.

18. Harvey was unable to provide any substantive details regarding Plaintiff's additional loss mitigation options, but scheduled Plaintiff for an April 22, 2024 phone call with his relationship manager Flores to further discuss other loss mitigation options.

19. On April 22, 2024, Plaintiff called Flores as scheduled. However, instead of

speaking with Flores, Plaintiff was connected with another PHH employee Lheo Vhin ("Vhin"). Vinh informed Plaintiff that PHH would evaluate Plaintiff for forbearance or repayment plan.

20. On that same day of April 22, 2024, Plaintiff submitted a forbearance/repayment plan application and income documentation to PHH through Vhin.

21. Harvey confirmed receipt of the forbearance/repayment plan application on April 23, 2024 and again on April 26, 2024. On April 29, 2024, PHH again confirmed receipt of Plaintiff's forbearance/repayment plan application.

22. On May 9, 2024, Plaintiff received an email from PHH scheduling him for a phone call to discuss his pending forbearance/repayment plan application with Flores on May 14, 2024.

23. But on May 14, 2024, Plaintiff received a phone call from another PHH employee Diana Rose ("Rose"). Rose was unable to provide any substantive information regarding the pending forbearance/repayment plan application, and therefore rescheduled Plaintiff for a call with Flores on May 24, 2024 at 4:30 p.m.

24. On May 20, 2024, despite having applied for forbearance or a repayment plan, Plaintiff received a letter from PHH indicating that his application for a loan modification had been denied.

25. On May 22, 2024 Plaintiff called PHH, and spoke with an employee named Heinrich. Plaintiff told Heinrich that he had not applied for a loan modification but rather had applied for forbearance or a repayment plan in accordance with Vhin's instructions.

26. Flores never called Plaintiff on May 24, 2024 as scheduled, and therefore Plaintiff called PHH and rescheduled a call with Flores for June 5, 2024 at 5:30 p.m.

27. But on June 5, 2024, Plaintiff received an email from PHH stating that

changes had been made to his pending forbearance/repayment plan application. Plaintiff therefore understood that PHH was now properly assessing him for forbearance or a repayment plan, rather than for a loan modification.

28.     Flores failed to call Plaintiff on June 5, 2024 at 5:30 p.m. as previously scheduled. But Plaintiff then received an email from PHH setting up a phone call with a different relationship manager Imee Marie Protacio ("Protacio") on June 10, 2024 at 4:00 p.m.

29.     Protacio called Plaintiff as scheduled and confirmed that Plaintiff had applied for forbearance and/or a repayment plan, rather than a loan modification. Protacio stated that Plaintiff was eligible for forbearance and/or a repayment plan.

30.     Protacio asked Plaintiff to resubmit the forbearance/repayment plan application and advised him that the application would be reviewed by PHH over the next 30 days. Protacio also scheduled a follow up call between Plaintiff and Flores on July 3, 2024 at 1 p.m.

31.     But on July 1, 2024, Plaintiff received another form letter from PHH denying his application for mortgage assistance.

32.     On July 3, 2024, Plaintiff spoke with Flores as scheduled. In this conversation, Flores told Plaintiff that his loan modification application had been denied.

33.     In response, Plaintiff told Flores that he had applied for forbearance or a repayment plan – not for a loan modification. Flores falsely claimed that Plaintiff had not applied for forbearance or a repayment plan, and that it was now too late for him to do so since the loan had been sent to foreclosure.

34.     Plaintiff then asked to speak with Flores' manager, and Flores scheduled a call between Plaintiff and her manager for July 11, 2024 at 3:45 p.m.

35. On July 5, 2024, PHH sent Plaintiff an email stating that changes had been made to his application for mortgage assistance. Plaintiff understood that this email indicated that PHH was still considering his application for forbearance or a repayment plan.

36. On July 11, 2024, Plaintiff received a call from a PHH employee named Aljon. Aljon put his female supervisor on the phone to discuss the status of Plaintiff's application for mortgage assistance.

37. The PHH supervisor put Plaintiff on hold while she reviewed the prior calls and correspondence between Plaintiff and PHH.

38. When she came back on the line, the PHH supervisor confirmed that Plaintiff had properly and timely requested mortgage assistance from PHH.

39. But the PHH supervisor said that Plaintiff had never been eligible to receive forbearance or a repayment plan, and that the PHH employees that Plaintiff had been dealing with should have known that Plaintiff was not eligible for this type of mortgage assistance based on his income level.

40. Plaintiff told the PHH supervisor that the misrepresentations from PHH regarding his eligibility to be considered for forbearance or a repayment plan had cost him months during which he could have been pursuing other options to bring the loan current.

41. The PHH supervisor stated that she understood Plaintiff's frustration and told Plaintiff that she had cancelled any acceleration of the loan so as to give Plaintiff more time to raise the money needed to reinstate the loan. The PHH supervisor told Plaintiff that PHH would not accelerate the loan until at least August 16, 2024.

42. Thereafter, Plaintiff received a notice dated July 19, 2024 by which an entity called Power Default Services, Inc. informed Plaintiff that he had defaulted on his

obligations under the loan. The notice did not provide Plaintiff with the amount necessary to cure the default, not did it advise Plaintiff that he had 20 days to cure the default before a notice of acceleration of the loan could be sent to him

43. Thereafter, Plaintiff received a Notice of Acceleration of Maturity dated July 25, 2024, which purported to accelerate the loan and to set the home for a foreclosure sale on September 3, 2024.

44. On August 23, 2024, Plaintiff submitted another application for mortgage assistance to PHH.

45. On August 26, 2024, PHH denied Plaintiff's application for mortgage assistance on the false basis that he had already been properly considered for all available loss mitigation alternatives.

46. On September 3, 2024, Plaintiff's home was sold by PHH at a foreclosure sale to Defendant Mount North.

47. The foreclosure sale price was grossly inadequate, as the home was sold for only $561,000 when its fair market value was at least $1.2M.

48. The substitute trustee's deed by which Mount North claims ownership of the home is void, as the notices required by Texas Property Code § 51.002 and 12 C.F.R. § 1024.41 were not provided to Plaintiff.

49. As a result of PHH's wrongful actions, Plaintiff lost his equity in the home, lost many hours of valuable time, incurred significant attorney fees and costs, and has been made to suffer severe mental anguish.

50. But for PHH's misrepresentations, Plaintiff would have been able to raise the money necessary to reinstate the loan and avoid foreclosure, such as by accessing his retirement accounts.

51. Plaintiff is ready, willing, and able to tender the funds necessary to reinstate the loan, when and if the foreclosure is rescinded.

## CAUSES OF ACTION

52. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 51 above.

53. The above-described acts of Defendant PHH constitute a wrongful foreclosure, in that the purported foreclosure took place without required notices, under fundamentally unfair circumstances, and in violation of Texas Property Code provisions and provisions of the deed of trust in question governing PHH's conduct. Plaintiff seeks damages caused by such wrongful foreclosure, as set forth below. Alternatively, Plaintiff seeks rescission of the foreclosure sale.

54. The foreclosure sale price of the home was grossly inadequate as it was for less than 50% of the fair market value of the home. But for the defective foreclosure process as set forth above, the home would never have been sold at a foreclosure sale for a grossly inadequate price.

55. The above-described acts of PHH also constitutes a breach of contract, in that PHH breached the deed of trust in question (including without limitation ¶ 22 of the deed of trust) by conducting an unlawful foreclosure sale without required notices, as described above.

56. The above-described acts of Defendant PHH also constitute the tort of negligent misrepresentation, in that PHH made the above-described misrepresentations in the course of a transaction in which Plaintiff had a pecuniary interest and supplied "false information" for the guidance of Plaintiff in his business. PHH did not exercise reasonable care or competence in obtaining or communicating the information, and Plaintiff suffered

pecuniary loss as set forth below by justifiably relying on the misrepresentations. Plaintiff seeks reliance damages that were proximately caused by this action, as set forth below.

57. The above-described acts of Defendant PHH constitute a violation of 12 C.F.R. § 1024.41, in that Plaintiff properly applied for loss mitigation but PHH failed to properly evaluate Plaintiff for all available loss mitigation options and then initiated foreclosure proceedings while simultaneously considering Plaintiff for loss mitigation options.

58. PHH further failed to clearly explain its decision on Plaintiff's loss mitigation application in writing and to give Plaintiff an opportunity to appeal the denial of Plaintiff's application for forbearance and/or a repayment plan before initiating and continuing foreclosure proceedings.

59. PHH waived and/or is estopped from asserting any requirement that Plaintiff apply for loss mitigation and/or appeal its decisions on loss mitigation in writing, as PHH routinely accepted Plaintiff's loss mitigation applications over the phone and allowed Plaintiff to appeal its decisions regarding loss mitigation over the phone.

60. Plaintiff is a consumer under the Texas Debt Collection Practices Act, as his claims arise out of a loan on the home that is a consumer debt. The above-described acts of PHH constitute intentional and knowing violations of the following sections of the Texas Finance Code: § 392.301(a)(8), § 392.303(a)(2), § 392.304(a)(8), §392.304(a)(14) and §392.304(a)(19). Such conduct also violates the Texas Deceptive Trade Practices-Consumer Protection Act pursuant to Texas Finance Code § 392.404. Plaintiff seeks actual and additional damages caused by such violations, as set forth below.

61. Defendant PHH's actions also constitute common law fraud, in that on or about July 11, 2024 Defendant PHH's supervisor misrepresented that the loan was not

subject to acceleration until August 16, 2024 but PHH then proceeded to accelerate the loan on or about July 25, 2024, without providing adequate notice of default to Plaintiff as required by the Texas Property Code.

62. Plaintiff reasonably relied on Defendant PHH's misrepresentations by failing to pursue other options for reinstating the loan.

63. Defendant PHH's misrepresentations were a producing and proximate cause of his damages as set forth below.

64. PHH's actions were committed intentionally, knowingly, maliciously, and as part of a pattern and practice of deceit, thereby making PHH liable to Plaintiff for additional damages pursuant to the Texas Debt Collection Practices Act as it is tied into the Deceptive Trade Practices Act as well as for punitive damages under the common law.

65. Acts and omissions committed by agents, employees or attorneys of PHH are imputed to PHH pursuant to the doctrine of respondeat superior and the law of agency.

66. Plaintiff further makes a claim to quiet his title in the home against Defendant Mount North. Plaintiff is the rightful owner of the home. Mount North's claims title to the home based on a void substitute trustee deed. Plaintiff therefore seeks an order of this Court setting aside the substitute trustee's deed and establishing the validity and superiority of his title to home.

## DAMAGES AND ATTORNEY FEES

67. As a direct and proximate result of the above-described acts of Defendant PHH, Plaintiff has suffered damages in the form of lost equity in the home, loss of time, damage to credit reputation, attorney fees, and severe mental anguish.

68. Plaintiff seeks reasonable and necessary attorney fees pursuant to the Texas Debt Collection Practices Act, the Texas Deceptive Trade Practices Act, Chapter 38 of the

Texas Civil Practice and Remedies Code, and the common law.

## APPLICATION FOR PRELIMINARY INJUNCTION

69. Plaintiff seeks a preliminary injunction prohibiting Defendant Mount North from attempting to take possession of the home or interfere with Plaintiff's right to quiet and peaceful possession of the home during the pendency of this action.

70. Plaintiff has a probable right to relief because the foreclosure sale in question was conducted without proper notices as required by Texas Property Code § 51.002 and 12 CFR 1024.41, and under fundamentally unfair circumstances, thus rendering the sale invalid and the substitute trustee's deed void.

71. Plaintiff will suffer probable injury if the injunction is not granted, as he will be permanently deprived of title to and possession of a unique piece of real estate, which constitutes irreparable injury.

72. The threatened injury to Plaintiff outweighs any harm that the injunction might cause to Mount North, and thus the balance of the equities favors the issuance of an injunction.

73. The granting of a preliminary injunction in this case would not disserve the public interest.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Mark Hennigan, Plaintiff herein, respectfully prays that the Court issue a preliminary injunction as set forth above, and that after trial on the merits, the Court set aside the substitute trustee's deed in question and quiet title in the home in Plaintiff, and/or alternatively that the Court award Plaintiff his actual and additional damages, attorney fees, pre-judgment and post-judgment interest, and costs in an amount within the jurisdictional limits of the Court, and for such other and

further relief, in law or in equity, to which Plaintiff may be justly entitled.

          Respectfully submitted,

          RILEY & RILEY
          ATTORNEYS AT LAW

          By: */s/ Charles Riley*
          Charles Riley
          Texas Bar No. 24039138
          320 Lexington Ave.
          San Antonio, Texas 78215-1913
          Tel. (210)225-7236
          Fax. (210)227-7907
          *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I certify that on the 24th day of February 2025 a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jose M. Rubio
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, Texas 75201

Stephanie Sepulveda
1401 McKinney St., Suite 1625
Houston, Texas 77010
*Attorneys for Defendant*
*PHH Mortgage Corporation d/b/a*
*PHH Mortgage Services*

West W. Winter
The Winter Law Firm, PLLC
9601 McAlister Freeway, Suite 401
San Antonio, Texas 78216
*Attorney for Defendant*
*Mount North Capital 4 LLC*

          */s/ Charles Riley*
          CHARLES RILEY

## **DECLARATION**

My name is Mark Hennigan. I am fully competent to make this declaration and have personal knowledge of the facts stated herein. Pursuant to 28 USC §1746, I declare under penalty of perjury that I have read the facts stated in Plaintiff's First Amended Complaint and they are true and correct.

Executed on February 24, 2025

_____
Mark Hennigan

## **DECLARATION**

My name is Jill Hennigan. I am fully competent to make this declaration and have personal knowledge of the facts stated herein. Pursuant to 28 USC §1746, I declare under penalty of perjury that I have read the facts stated in Plaintiff's First Amended Complaint and they are true and correct.

Executed on February 24, 2025

_____
Jill Hennigan